IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. KOLE DOUGLAS MILNER,

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Jason R. Dunn, United States Attorney for the District of Colorado, and Conor A. Flanigan, Assistant United States Attorney (the "Government"), and the Defendant, Kole Douglas Milner (the "Defendant"), personally and by counsel, Jaime Cowan (together, the "Parties" and individually a "Party"), hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.   AGREEMENT

#### A.   Defendant's Obligations

The Defendant agrees to plead guilty to Count One of the Information, charging a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), possession with intent to distribute a controlled substance, to wit, psilocybin mushrooms, a Schedule I controlled substance, and waive his appellate rights as set forth below.

#### B. Government's Obligations

In exchange for the Defendant's plea of guilty and waiver of certain appellate

1

COURT EXHIBIT 1

rights, if the Government determines, in its sole discretion, that the Defendant has complied with the terms of this Plea Agreement, and once the Court indicates its acceptance of the Defendant's plea of guilty as described herein, agrees to: (1) recommend the Court give the Defendant full credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, unless the Defendant engages in conduct that is not consistent with acceptance of responsibility or qualifies for the obstruction of justice enhancement under U.S.S.G. § 3C1.1 and 3E1.1, comment n. 4 between the time of the guilty plea and sentencing; and (2) recommend a sentence of six (6) months imprisonment, amounting to a downward variance below the applicable guideline range estimated by the Parties herein, followed by three (3) years of supervised release.

C. **Defendant's Waiver of Appellate Rights**

The Defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the Government in this Plea Agreement, the Defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the Court determines that the total offense level is higher than **12** (or 14, if the Defendant does not qualify for acceptance of responsibility, as set forth above) and imposes a sentence above the advisory guideline range that applies to a total offense level of **12** (or 14, if the Defendant does not qualify for acceptance of responsibility, as set forth above); or (3) the Government appeals the sentence imposed. If any of these

three criteria apply, the Defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The Defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the Defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the Defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the Defendant was deprived of the effective assistance of counsel; or (3) the Defendant was prejudiced by prosecutorial misconduct.

### D. Forfeiture of Assets

The Defendant agrees to forfeit to the United States immediately and voluntarily any and all property, or portions thereof, subject to forfeiture, pursuant to Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States or in the possession or control of the Defendant or Defendant's nominees, or elsewhere. The Defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The assets to be forfeited specifically include, but are not limited to any items identified in the Information. The Defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.

The Defendant admits and agrees that the conduct described in the Stipulation of

3

Facts below provides a sufficient factual and statutory basis to establish that the requisite nexus exists between the specific property subject to forfeiture and the offense to which Defendant will plead guilty. Pursuant to the provisions of Rule 32.2(b)(1), the Government and the Defendant request that at the time of accepting this Plea Agreement, the Court find that the Government has established the requisite nexus and enter a preliminary order of forfeiture.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the Defendant will plead guilty are as follows[1]:

*First:* the Defendant knowingly or intentionally possessed a controlled substance as charged;

*Second:* the substance was in fact psilocybin; and

*Third:* the Defendant possessed the substance with the intent to distribute it.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as charged in Count 1 of the Information is not more than 20 years imprisonment, not more than a $1,000,000 fine, or both; not less than 3 years of supervised release; and a $100 special assessment.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in an additional term of imprisonment.

---

[1] *10th Circuit Pattern Jury Instruction § 2.85*, Controlled Substances – Possession with Intent to Distribute 21 U.S.C. § 841(a)(1) (2011).

4

## IV.   COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury. If the Defendant is an alien, the conviction may cause the Defendant to be deported and removed from the United States, to be denied admission to the United States, and to be denied citizenship.

## V.   STIPULATION OF FACTS

The Parties agree that there is a factual basis for the guilty plea that the Defendant will tender pursuant to this Plea Agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the Parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement.

This stipulation of facts does not preclude either Party from hereafter presenting the Court with additional facts which do not contradict facts to which the Parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The Parties stipulate and agree as follows:

On or about November 2018, the Defendant began to cultivate and distribute

psilocybin mushrooms, a Schedule I controlled substance, from his apartment located in Denver, Colorado. At this time, the Defendant sold psilocybin mushrooms to approximately 20 customers, and made approximately $800/month in sales of psilocybin mushrooms to his customers by selling a standard 1/8 of an ounce dose for $30. By June 2019, the Defendant purchased new equipment to allow him to produce greater quantities of psilocybin mushrooms, increasing his profits from the sale of psilocybin mushrooms to approximately $2000/month. The Defendant accepted payments from his customers in cash, as well as on an electronic payment application on his cell phone.

The Defendant conducted his psilocybin mushroom sales under the name "Happy Fox Edibles," and created t-shirts to promote this brand. The Defendant also packaged and sold psilocybin mushrooms in plastic bags, canisters, and Ziploc bags bearing the "Happy Fox Edibles" logo. The Defendant also promoted his brand through the media, and was the subject of several news articles and video features related to his cultivation and sale of psilocybin mushrooms. In videos and photographs taken from these stories, the Defendant can be seen wearing a "Happy Fox Edibles" t-shirt.

On or about February 2019, the Denver Police Vice Unit received a narcotics complaint that the Defendant was cultivating psilocybin mushrooms in his apartment. On or about March 28, 2019, an undercover officer with the Denver Police Department ("UC1") made contact with the Defendant via social media, and began to communicate directly with the Defendant about psilocybin mushrooms.

On or about May 23, 2019, the Defendant met with a second undercover officer with the Denver Police Department ("UC2") for the purpose of selling UC2 psilocybin

mushrooms. At approximately 5:30 p.m., UC2 arrived outside of the Defendant's apartment in UC2's undercover vehicle. The Defendant walked out of the apartment complex, and got into UC2's vehicle. Once inside, the Defendant presented a medium-sized black bag with the "Happy Fox Edibles" logo. The Defendant explained that he puts the mushrooms inside of black bags bearing a THC sticker to disguise them as marijuana product. The Defendant also stated that the "Happy Fox Edibles" logo on the bag was designed by him as a logo for his business to sell psilocybin mushrooms. UC2 then paid the Defendant $180 for the psilocybin mushrooms. The Defendant counted these bills, handed UC2 the black bag with the "Happy Fox Edibles" logo, then exited the vehicle. Upon further examination, the black bag with the "Happy Fox Edibles" logo was found to contain approximately 27.894 grams of dried psilocybin mushrooms.

On or about September 11, 2019, special agents with the Drug Enforcement Administration ("DEA") executed a Search Warrant at the Defendant's apartment, located in Denver, Colorado. Inside the Defendant's apartment, investigators discovered a sophisticated psilocybin mushroom cultivation operation. In the Defendant's bedroom, the Defendant maintained a large, climate-controlled tent, equipped with lights, fans, humidification and de-humidification devices, and other equipment to aid in the cultivation of psilocybin mushrooms. Inside this tent, investigators discovered six (6) large plastic bins containing approximately 906 live psilocybin mushrooms, with a total weight of approximately 1147 grams.

Investigators also discovered an additional approximately 291.6 grams of dried psilocybin mushrooms stored in plastic tubs in a closet in the apartment. On a desk inside

the apartment, investigators also discovered two black film canisters bearing a "Happy Fox Edibles" logo, containing approximately 14 capsules of psilocybin doses, along with an "All-In Capsule" device used for filling homemade capsules, a book on psilocybin mushroom cultivation, and digital scales. At the time of the execution of the Search Warrant, the Defendant carried a backpack, which contained three large black plastic bags bearing a "Happy Fox Edibles" logo, containing approximately 156.7 grams of dried psilocybin mushrooms. Throughout the Defendant's apartment, investigators also discovered numerous items used in the cultivation of psilocybin mushrooms, including approximately 58.7 grams of psilocybin mushroom roots, psilocybin mushroom spores, manure based mushroom substrate, casing soil, plastics bins and trays, and other cultivation equipment.

## ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The Parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the Parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the Parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the Parties, but it is only an estimate. The Parties understand that the Government has an independent

obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the Government may make legal or factual arguments that affect the estimate below.

    A.    <u>Base Offense Level</u>:    **12**

The Parties estimate that the base offense level is **12** pursuant to USSG § 2D1.1, Comment n. 8(D).

    B.    <u>Specific Offense Characteristics</u>:

The Parties agree that the Defendant should receive a **+2 level enhancement** for maintaining a premises for the manufacture or distribution of a controlled substance pursuant to USSG § 2D1.1(b)(12).

There are no additional victim-related, role-in-offense, obstruction, and/or multiple count adjustments.

    C.    <u>Adjusted Offense Level</u>:    **14**

    D.    <u>Acceptance of Responsibility</u>:

The Defendant should receive a **2-level** adjustment for acceptance of responsibility under USSG. § 3E1.1(b), subject to the limitations identified in Section I(B) of this Plea Agreement.

    E.    <u>Total Offense Level</u>:    **12**

    F.    <u>Criminal History</u>:

The Parties understand that the Defendant's criminal history computation is tentative. The Criminal History Category is determined by the Court based on the Defendant's prior convictions. Based on information currently available to the Parties, it

is estimated that the Defendant's Criminal History Category is **I**. Assuming the criminal history facts known to the Parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

G.  Imprisonment:

The advisory guideline range of imprisonment resulting from the estimated offense level of **12** and a Criminal History Category of **I**, if applicable, is **10-16 months**. However, to be as accurate as possible, with the Criminal History Category undetermined at this time, the offense level estimated above could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI).

H.  Fine:

Pursuant to USSG § 5E1.2, assuming the estimated offense level of **12,** the fine range for this offense would be **$5,500 to $55,000**, with a statutory maximum of **$1,000,000**, plus applicable interest and penalties.

I.  Supervised Release:

Pursuant to USSG § 5D1.2(a)(1), if the Court imposes a term of supervised release, that term is **not less than three years.**

The Parties understand that although the Court will consider the Parties' guidelines estimate, the Court must make its own determination of the applicable guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the Parties regarding the guideline range precludes either Party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that Party believes that a departure is specifically authorized by the

guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the Parties regarding the guideline range precludes either Party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The Parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any Party on any 18 U.S.C. § 3553 factor.

//

//

## VI. ENTIRE AGREEMENT

This document states the Parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this Plea Agreement, neither the Government nor the Defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this Plea Agreement.

Date: 6-18-20

Kole Douglas Milner
Defendant

Date: 6/18-20

Jaime Cowan
Attorney for the Defendant

Date: 9/22/20

s/ Conor A. Flanigan

Conor A. Flanigan
Assistant United States Attorney