**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00224-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **KOLE DOUGLAS MILNER,**

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VARIANCE
[CM/ECF No. 13]**

---

The United States of America (the "Government"), by Jason R. Dunn, United States Attorney for the District of Colorado, and through Conor A. Flanigan, Assistant United States Attorney, hereby submits the Government's Response to Defendant Kole Douglas Milner's (the "Defendant") Motion for Variance from Sentencing Guidelines Pursuant to 18 U.S.C. § 3553 [CM/ECF No. 13] (the "Motion for Variance") and states:

## I.  INTRODUCTION

The parties agree with Probation's guideline calculations set forth in the Presentence Investigation Report, which calculates the guideline range applicable to the Defendant to be 10-16 months. [CM/ECF No. 15-1, p. 2]. The parties also agree that a variant sentence, to some extent, is appropriate. The Government, however, disagrees with the Defendant's request for a sentence of probation, as this does not adequately reflect the nature of the Defendant's conduct. [CM/ECF No. 13, ¶ 1]. Consistent with the

Government's obligations under the Plea Agreement and Probation's recommendation, the Government requests the Court impose a variant sentence of 6 months, amounting to a 4-month downward variance from the low-end of the applicable guideline range, followed by a term of three years of supervised release.  Such a sentence is sufficient, but not greater than necessary, to achieve the aims of 18 U.S.C. § 3553(a).

## II.  APPLICATION OF 18 U.S.C. § 3553(a) FACTORS

The Government's recommended sentence is appropriate given the nature and circumstances of the offense, the history and characteristics of the Defendant, and the need for the sentence to achieve the policy aims of 18 U.S.C. § 3553(a).

A. The Nature and Circumstances of the Offense Warrant a Sentence of Imprisonment

    1.  **Overview**

This case results from the Defendant's knowing, flagrant disregard for federal drug laws related to the cultivation and sale of psilocybin mushrooms.  As set forth in the Plea Agreement, beginning in November 2018, the Defendant began to cultivate and distribute psilocybin mushrooms, a Schedule I controlled substance, from his apartment located in Denver, Colorado.  At this time, the Defendant sold psilocybin mushrooms to approximately 20 customers, and made approximately $800/month in sales of psilocybin mushrooms to his customers by selling a standard 1/8 of an ounce dose for $30.

As time wore on, the Defendant began to brand his products as if it were a legitimate business.  He conducted his psilocybin mushroom sales under the name "Happy Fox Edibles," and created t-shirts to promote this brand.  The Defendant also

packaged and sold psilocybin mushrooms in plastic bags, canisters, and Ziploc bags bearing the "Happy Fox Edibles" logo. As he promoted his brand, his business grew; by June 2019, the Defendant purchased new equipment to allow him to produce greater quantities of psilocybin mushrooms, increasing his profits from the sale of psilocybin mushrooms to approximately $2000/month.

The primary method the Defendant used to promote his brand was through the media. The Defendant was the subject of several news articles and video features related to his cultivation and sale of psilocybin mushrooms, which ultimately caught the attention of investigators with the DEA. These stories were described in detail in the Affidavit of DEA Special Agent Samuel Glynn in Support of the Search Warrant investigators obtained for the Defendant's apartment on September 10, 2019 [19-sw-05881-KMT, CM/ECF No. 1-1, attached hereto as Exhibit 1], the pertinent portions of which are summarized below.

### 2. The *Denver Post* Article

On August 23, 2019, investigators with the DEA learned of an article in the *Denver Post* entitled "Spores of psychedelic mushroom industry are sprouting in Denver after decriminalization" dated August 23, 2019 (the "*DP* Article"). The *DP* Article briefly described the growing distribution network of illegal psilocybin mushrooms in the Denver metropolitan area after decriminalization of simple possession of psilocybin mushrooms. The *DP* Article focused mainly on an unidentified male subject (later identified as the Defendant), a self-proclaimed cultivator and distributor of mushrooms. In the *DP* Article,

the Defendant explained that he packaged the mushrooms in the same canisters and bags as the cannabis industry, complete with his custom logo.

The *DP* Article also featured a video showing the process of cultivating and manufacturing illegal psilocybin mushrooms in the Defendant's residence. He explained he grows the mushrooms in a cannabis tent that has been repurposed to cultivate mushrooms. The video showed the various stages of cultivation, from the initial growth to the finished dried product. The following is a screenshot of a portion of this video:



### 3. The NPR Article

Investigators also located an article on National Public Radio's website entitled "A Growing Push to Loosen Laws around Psilocybin, Treat Mushrooms as Medicine", dated May 7, 2019 (the "NPR Article"). The subject of the NPR Article is an unidentified male identified as "Douglas" (later identified as the Defendant). In the NPR Article, the

Defendant discussed his active cultivation, manufacture, and distribution of psilocybin mushrooms, with various quotes used in the article mirroring those from the *DP* Article.

The NPR Article also contained two photographs of the Defendant, neither of which showed his face, but show the Defendant wearing a white t-shirt with a logo for "Happy Fox Edibles." A screenshot of one of the photographs is included below:



### 4. The Harvest Public Media Article

Investigators then located an article from Harvest Public Media entitled "A Growing Movement Wants to Loosen Laws around Psilocybin, Treat Mushrooms as Medicine" dated April 29, 2019 (the "Harvest Article"). The Harvest Article appears to be similar or identical in content to the NPR Article documenting the cultivation, manufacture, and distribution of psilocybin mushrooms by the Defendant. The Harvest Article also

contained another photograph of the Defendant wearing the "Happy Fox Edibles" t-shirt. A screenshot of this photograph is included below:



Another photograph shows the Defendant's hands holding psilocybin mushrooms. A screenshot of this photograph is included below:



### 5. The *Westword* Article

Investigators also located an article from *Westword* entitled "Psilocybin Dealer on Life After Decriminalization" dated May 15, 2019 (the "*Westword* Article"). In the *Westword* Article, the Defendant stated that he does not do cash deals, and uses only electronic transactions in an effort to thwart any kind of law enforcement prosecution if he is caught selling mushrooms to a customer. He also stated that he meets customers at locations near, but not at his apartment. Critically, the Defendant admitted that he knew he could get in trouble selling psilocybin mushrooms, so he used encrypted text messages to talk to his customers. The *Westword* Article also contained a photograph of the Defendant's cultivation of psilocybin mushrooms, a screenshot of which is included below:



### 6. The VICE News Video

Investigators also located a documentary video by VICE News entitled "How Denver Decriminalized Magic Mushrooms" dated May 8, 2019 (the "VICE Video"). The VICE Video follows the Defendant, again identified by the name "Douglas." The Defendant again wears a "Happy Fox Edibles" t-shirt. The VICE Video shows a walk-in tent in the Defendant's bedroom, near the foot of his bed, where he cultivated psilocybin mushrooms. While speaking with a reporter, the Defendant explained that he knows it is illegal to grow and sell psilocybin mushrooms, stating: "it is illegal in every way possible." Screenshots from the VICE Video are included below:







### 7. September 11, 2019 Search of the Defendant's Apartment

On September 11, 2019, based on the information referenced above as well as further investigation, special agents with the DEA executed a Search Warrant at the Defendant's apartment, located in Denver, Colorado. Inside the Defendant's apartment, investigators discovered the psilocybin mushroom cultivation operation depicted in the

articles and video seen by investigators. In the Defendant's bedroom, the Defendant maintained a large, climate-controlled tent, equipped with lights, fans, humidification and de-humidification devices, and other equipment to aid in the cultivation of psilocybin mushrooms. Inside this tent, investigators discovered six (6) large plastic bins containing approximately 906 live psilocybin mushrooms, with a total weight of approximately <u>1147 grams</u>.

Investigators also discovered an additional amount of approximately <u>291.6 grams</u> of dried psilocybin mushrooms stored in plastic tubs in a closet in the apartment. On a desk inside the apartment, investigators also discovered two black film canisters bearing a "Happy Fox Edibles" logo, containing approximately <u>14 capsules</u> of psilocybin doses, along with an "All-In Capsule" device used for filling homemade capsules, a book on psilocybin mushroom cultivation, and digital scales. At the time of the execution of the Search Warrant, the Defendant carried a backpack, which contained three large black plastic bags bearing a "Happy Fox Edibles" logo, containing approximately <u>156.7 grams</u> of dried psilocybin mushrooms. Throughout the Defendant's apartment, investigators also discovered numerous items used in the cultivation of psilocybin mushrooms, including approximately <u>58.7 grams</u> of psilocybin mushroom roots, psilocybin mushroom spores, manure based mushroom substrate, casing soil, plastics bins and trays, and other cultivation equipment.

### 8. The Severity of the Defendant's Conduct

Put simply, from approximately November 2018 to September 2019, the Defendant orchestrated a sophisticated operation to cultivate, advertise, and distribute psilocybin

mushrooms. The Defendant's conduct is particularly aggravated because of the way in which he distributed his products. The Defendant repeatedly utilized print and video media to promote his brand, wearing his "Happy Fox Edibles" t-shirt and providing reporters with in-depth, behind-the-scenes looks at his cultivation process. This was despite the fact that the Defendant knew that his actions were in violation of federal law; the Defendant utilized encrypted communications services to speak with customers, transported his products in packaging consistent with marijuana sold in the State of Colorado, and did not conduct sales at his apartment, with the aim of avoiding law enforcement detection. Indeed, the Defendant even admitted his conduct was criminal, stating in the VICE Video that his actions were "illegal in every way possible." But this did not stop the Defendant from cultivating and distributing psilocybin mushrooms, growing his business, and expanding his operations. And it did not stop the Defendant from utilizing media sources to advertise his conduct. It is this disregard for the federal drug laws that separates the Defendant's actions from many other controlled substances offenses. The Defendant did not just produce and sell psilocybin mushrooms; he did it while openly thumbing his nose to federal law, wielding this as a point of pride to gain publicity and notoriety for his brand. This conduct warrants a sentence of imprisonment.

B. <u>The History and Characteristics of the Defendant Do Not Outweigh the Severity of the Nature and Circumstances of the Offense</u>

The Government acknowledges that the Defendant's non-existent criminal history and young age of 29 do not warrant an unduly harsh sentence in this case. With that said, a sentence of probation is too lenient given the specific offense conduct described

above. Moreover, the fact that the offense was not a one-off mistake, but a sustained period of nearly a year of criminal activity, suggests the Defendant's lack of criminal history should not absolve him of punishment. Indeed, the degree of sophistication to which the Defendant grew his drug distribution enterprise supports a sentence of imprisonment. While the Court must account for the specific history and characteristics of the Defendant, it must also ensure that the sentence imposed adequately reflects the Defendant's actions described above. The Government's recommendation of a 6-month sentence of imprisonment, amounting to a 4-month downward variance from the low-end of the guideline range, appropriately accounts for the Defendant's lack of criminal history, and also reflects the sustained pattern of criminal activity.

### C. A 6-Month Sentence of Imprisonment Fulfills the Policy Aims of 18 U.S.C. § 3553(a)

The Government's recommended sentence will also serve the aims of 18 U.S.C. § 3553(a) by instilling respect for the law and affording adequate specific and general deterrence.

This sentence will provide respect for the law by demonstrating to the Defendant, and society at large, that the Court takes knowing, open violations of federal drug laws seriously. Offenses involving psilocybin mushrooms do not often appear before the federal courts. Those that do usually involve specific offense conduct so egregious that prosecution is appropriate. This is one such case. A sentence of imprisonment will show society at-large that federal courts treat criminal activity that pushes beyond the outer bounds of typical criminal behavior, as in this case, with commensurate severity. This is

true even in the case of psilocybin mushrooms, dispelling the notion that some federal drug laws are enforced less vigorously than others.

The Government's recommended sentence will also deter both the Defendant and others from committing similar offenses in the future. From the Defendant's perspective, a 6-month sentence will be the Defendant's first term of incarceration. This sentence will help to deter future criminal conduct by the Defendant by instilling in him the seriousness of his offense, while also not unduly impairing his ability to change his behavior upon his release. As it pertains to others, a sentence of imprisonment will signal that open and repeated violations of federal law will be met with appropriate punishment, even in the case of first-time offenders. This will prevent others from falling under the mistaken belief that the cost-benefit of perpetrating a drug cultivation, marketing, and distribution enterprise tips in favor of the latter.

### III. CONCLUSION

For the reasons set forth herein, and consistent with Probation's recommendation, the Government respectfully requests the Court impose a sentence of 6 months imprisonment, amounting to a downward variance of 4 months below the low-end guideline range, followed by 3 years' supervised release.

Respectfully submitted this 25th day of January, 2021.

                                          JASON R. DUNN
                                        United States Attorney

By:   *s/Conor A. Flanigan*
       CONOR A. FLANIGAN
       Assistant United States Attorney
       United States Attorney's Office
       1801 California Street, Suite 1600
       Denver, Colorado  80202
       Telephone:  (303) 454-0100
       Fax:  (303) 454-0405
       E-mail:  conor.flanigan@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January, 2021, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VARIANCE [CM/ECF No. 13]** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

Jaime N. Cowan, Esq.
E-mail: jcdefense@gmail.com
Attorney for Defendant Kole Douglas Milner

<u>s/Maggie Grenvik</u>
Maggie Grenvik
Legal Assistant